## L. E. WATERMAN CO. v. GORDON.

District Court, S. D. New York.
June 1, 1934.

Gifford, Scull & Burgess, of New York City (George F. Scull and William F. Wilder, both of New York City, of counsel), for plaintiff.

Schechter, Lotsch & Sulzberger, of New York City (John L. Lotsch, of New York City, of counsel), for defendant.

PATTERSON, District Judge.

The plaintiff has moved for a preliminary injunction in a suit based on infringement of trade-mark and unfair competition.

The bill shows that the plaintiff or predecessors have been engaged in the business of selling fountain pens since 1883, under the registered trade-mark "Waterman's"; the goods being known throughout the world as the plaintiff's manufacture and being renowned for their good quality. The defendant, whose name is Gordon, does a business in razor blades which he calls Waterman blades. He styles himself the Waterman Blade Company. It is alleged that the public is misled into the belief that the blades are products of the plaintiff's manufacture. It is further alleged that the defendant or his agents have sold these Waterman blades by advertising that fountain pens will be given away free to purchasers of blades, and that the public is induced to believe that the pens so given away are the plaintiff's pens, whereas in fact they are altogether inferior. Relief by way of injunction is asked on the grounds of infringement of trade-mark and unfair competition.

The plaintiff's moving papers give the details of one of the methods employed in selling the Waterman blades. In many cities, newspapers and handbills carry advertisements of "Waterman's New Deal" (an obvious adaptation of "Waterman's Ideal"), to the effect that a $2.50 fountain pen will be given "absolutely free" with each purchase of a 49-cent package of Waterman blades, and that the pen is a "regular" one and guaranteed by one F. A. Waterman. In some instances those responsible for this "free offer" have been so bold as to display the pens in boxes bearing the plaintiff's name and of *the kind ordinarily used by the plaintiff in* selling its pens. The pens thus used as bait to sell the blades are of course not those of the plaintiff's make, but are practically worthless. The F. A. Waterman who is advertised as sponsoring the scheme is a mythical person. Those operating it make arrangements for space with the druggists in different cities and are "here to-day and gone to-morrow." It is abundantly shown that many persons have received the impression that it is the plaintiff that is making the "free offer," in an effort to introduce the Waterman blades.

The defendant in his answering affidavit denies any connection with or knowledge of this "free offer" plan that is being worked in the sale of the Waterman blades, and there is no proof to the contrary. The defendant also insists that the word "Waterman" on razor blades does not infringe the plaintiff's trade-mark on fountain pens, and that he has not traded on the plaintiff's good will in any way. There is no one by the name of Waterman with the defendant, however, and no reason for the choice of that name by the defendant is suggested by him.

At the outset the defendant challenges the jurisdiction of the federal court to entertain the suit, to the extent that it is based on unfair competition. There is no diversity of citizenship, since both parties are residents of New York, and a suit for unfair competition alone would not lie in this court. But there is jurisdiction to hear the case as one involving infringement of a registered trade-mark (Trade-mark Act, § 17, 15 USCA § 97), and where suit is brought to obtain relief against infringement of trade-mark and unfair competition, arising from the same

acts and framed as one cause of action, the federal ground carries the nonfederal ground along with it and there is jurisdiction to entertain the entire case. Hurn v. Oursler, 289 U. S. 238, 53 S. Ct. 586, 590, 77 L. Ed. 1148. The bill here is like that in the Hurn Case. Infringement of trade-mark and unfair competition are simply "different grounds asserted in support of the same cause of action." There is then jurisdiction over the whole case —the feature of unfair competition as well as the feature of infringement.

The defendant's other point is that both infringement of trade-mark and unfair competition are negatived by the fact that the products involved—fountain pens and razor blades—are not goods in the same class and are not in competition. There was a time when such an argument would have furnished a crushing answer. But more recently it has been recognized that concerns with valuable trade-marks and valuable good will are entitled to protection of a broader sort. When others borrow the trade-mark for articles of another kind, the impression is frequently spread that these articles also are the product of the proprietor of the trade-mark. It is supposed by many that the old concern has gone into a new field. To create that impression is of course the hope and purpose of the newcomer. The result is that by deception he gets an advantage which he has not earned, while the proprietor is put to the hazard of losing his reputation in case the articles or business methods of the other damage the value of his trade-mark. It is now the generally (though not universally) recognized rule that a trade-mark used on one article cannot be appropriated by a stranger for use on another kind of article in any case where there is likelihood that the purchasing public will be deceived into believing that the new article is the product of the established proprietor of the trade-mark. Aunt Jemima Mills Co. v. Rigney & Co., 247 F. 407, L. R. A. 1918C, 1039 (C. C. A. 2); Akron-Overland Tire Co. v. Willys-Overland Co., 273 F. 674 (C. C. A. 3); Ruppert, Inc. v. Knickerbocker Food Specialty Co., 295 F. 381 (D. C. N. Y.); Vogue Co. v. Thompson-Hudson Co., 300 F. 509 (C. C. A. 6); Wall v. Rolls-Royce, 4 F.(2d) 333 (C. C. A. 3); Vick Chemical Co. v. Vick Medicine Co., 8 F.(2d) 49 (D. C. Ga.); Rogers, Ltd. v. Majestic Products Corporation, 23 F.(2d) 219 (D. C. Del.); Yale Electric Corporation v. Robertson, 26 F.(2d)

972 (C. C. A. 2); Duro Co. v. Duro Co., 27 F.(2d) 339 (C. C. A. 3). While the Trade-mark Act limits the protection of the trade-mark to "merchandise of the same descriptive properties," these words have a meaning akin to "goods of the same class," used in the same section (section 5, as amended, 15 USCA § 85); and it is well understood that the controlling consideration is whether confusion will result. If it will, the two kinds of goods are of the same class. Yale Electric Corporation v. Robertson, supra; B. F. Goodrich Co. v. Hockmeyer, 40 F.(2d) 99 (Cust. & Pat. App.).

Here the plaintiff's trade-mark is the name of Waterman on fountain pens. The disparity between pens and razor blades is no greater than that between automobiles and radio tubes (Wall v. Rolls-Royce, supra), or that between locks and flash-lights (Yale Electric Corporation v. Robertson, supra). Fountain pens and razor blades are both sold in drug stores. The defendant is not Waterman and has no connection with the name. He took it for his blades wholly gratuitously and in the evident hope that sales might drift his way because of the high esteem in which the plaintiff's pens are held. And whether or not he is personally responsible for the shabby fraud being perpetrated in the "free offer" of a pen with a package of Waterman blades, the fact remains that unscrupulous dealers are victimizing the public by working up a false relationship between Waterman pens and Waterman blades, to the defendant's profit and the plaintiff's damage. There is a palming off of the blades as if made by the plaintiff, as well as a palming off of worthless pens as those made by the plaintiff. This double-barreled fraud is facilitated by the initial fraud of the defendant in calling his blades the Waterman blades.

The defendant finally says in justification that other blades are being sold under other well-known marks by persons not connected with the owners of those marks. This is merely a statement that he is not the only offender.

Infringement of trade-mark and unfair competition are thoroughly shown, and the situation is one calling for prompt redress. The plaintiff will have a preliminary injunction against the continued making and selling of blades bearing the trade-mark Waterman and against further use of the name Waterman Blade Company.