AMERICAN AUTOMOBILE INS. CO. et al.
v. AMERICAN AUTO CLUB.
No. 12484.

United States Court of Appeals
Ninth Circuit.
Sept. 28, 1950.

408

Parker, Stanbury & Reese, Harry D. Parker, Richard E. Reese and Raymond G. Stanbury, all of Los Angeles, Cal., for appellants.

Browson, Bronson & McKinnon and Edgar H. Rowe, all of San Francisco, Cal., for appellee.

Before STEPHENS, Circuit Judge, and BOWEN and LEMMON, District Judges.

LEMMON, District Judge.

This case presents the recurrent problem of exclusive right in a generic name or combination of generic names under claim of secondary meaning. The appeal is from a judgment declining an injunction to appellants, plaintiffs below, prohibiting appellee, defendant below, from the use of the words "American Auto" and "The American Auto Club" in connection with appellee's business, and in particular with that business as it relates to the sale and solicitation of insurance policies.

Plaintiff corporations are engaged in writing automobile insurance in its various coverages. Two other insurance corporations were purchased by the American Indemnity Corporation about the year 1943 and plaintiffs and these two corporations have a common ownership. The business of the four is conducted from the same location. Plaintiffs conduct a substantial business and enjoy an excellent reputation in their field of activity. Defendant is incorporated under the name of "American Auto Club" for the purpose of selling to its members the usual motor club services, such as towing, emergency road, bail bond, financial, buying and selling, map, license, etc. Included is assistance in securing adjustments to members who have claims against insurance companies. As found by the Court, the only insurance service contemplated, aside from adjusting claims for members, consists of referring members desiring casualty and other insurance to agents or brokers of insurance companies. Defendant does not intend to sell or issue, nor is it licensed to sell or issue, insurance policies of any kind.

The Court found that prior to the year 1944 plaintiffs advertised in trade journals, circulating among persons engaged in the insurance business, under the corporate names of each, and in some instances under the name "American Auto", but that these journals did not reach or circulate among the public generally. Prior to 1944 folders referring to plaintiffs by the name "American Auto" were distributed by plaintiffs to their clients but not to any substantial extent among the public. No advertising of this trade name calculated or designed to reach the public generally has been done during the past ten years, and before then, such was done in but "isolated instances". Since 1944 the advertising in trade journals by plaintiff has been done under the name "American Associated" or "American Associated Insurance Companies" and plaintiffs' desire is to be known by these names rather than to be known by the names here in question. Plaintiffs' business is conducted through brokers and agents who have their own clientele and rarely does the client or customer specify any particular company which he wishes to issue the policy he is purchasing. Plaintiffs are known to these and other insurance brokers and agents, but not to the public generally, as "American Auto", and such brokers and agents are also familiar with and know the true names of plaintiffs and they will not be confused through the use by defendant of its corporate name, "American Auto Club". We are of the opinion that these findings are supported by the evidence

and that the conclusions of law are properly drawn.

■ Generic terms and words descriptive of place are publici juris and not subject to exclusive appropriation.[1] But where there appears use of such in connection with goods or business so that the public identifies them with a particular trader they take on a secondary meaning which will be protected against another's deceptive use thereof.[2]

■ A greater degree of protection is afforded to fanciful trade names than to names in common use. Where a generic word is widely used in the designation of many diverse businesses, its use by one may not be prohibited at the behest of another, even in closely related fields, unless such use will indicate a common origin or endanger the business reputation of the other.[3] As expressed by this Court in Treager v. Gordon-Allen, Ltd., 9 Cir., 71 F.2d 766, 768, "There is a distinction as to the degree of exclusiveness of appropriation accorded to the originator of a trade-name depending upon the name selected. 'If the name or mark be truly arbitrary, strange, and fanciful, it is more specially and peculiarly significant and suggestive of one man's goods, than when it is frequently used by many and in many different kinds of business.' France Milling Co. v. Washburn-Crosby Co., 2 Cir., 7 F.2d 304, 306." The words "American" and "Auto" are used in identification of many businesses of diverse nature. The Court found that these words are not unique either individually or in combination. The evidence disclosed several instances wherein the combination "American Auto" has been used in the identification of automobile clubs. As such it is a common name in that field.

■ The probability of consumer confusion through use of the same or similar name varies with the nature of the businesses of the parties. This is pointed out with particularity in relation to casualty and surety companies in Standard Accident Ins. Co. v. Standard Surety & Casualty Co., D.C.S.D.N.Y., 53 F.2d 119, wherein it is observed that the good will of such companies is not so closely tied to their names as that of commercial companies and that a similarity in names is not so important to them. This is so because the brokers, agents and insurance managers who customarily determine in what companies insurance is to be placed are professional buyers, sufficiently conversant with the facts pertaining to them not to be misled by mere similarity in names as the general public might be. By comparison, articles for consumption may be and generally are hastily bought and consumed before deception is discovered.[4] As Lord Macnaughten put it in a case involving misappropriation of a name for ale: "Thirsty folk want beer, not explanations".[5] This is an important rationale in determining the nature of the claimed secondary meaning as applied to plaintiffs' business as also the question of likelihood of confusion.

■ It follows that whatever secondary meaning has attached to "American Auto" is limited and restricted. Plaintiffs are known by that name by a select group of informed persons and not by the general public. Though the fact the clientele is limited does not defeat the right to protection,[6] this is an important circumstance bearing upon likelihood of confusion.

In Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A.1918C, 1039, there was first advanced the confusion of source factor. This test is now quite generally adopted. It is bottomed upon the likelihood of confusion of the goods or business of the prior appropriator of a

1. American Automobile Ass'n v. American Automobile Owners' Ass'n, 216 Cal. 125, 13 P.2d 707, 82 A.L.R. 699; Dunston, etc. v. Los Angeles Van & Storage Co., et al., 165 Cal. 89, 131 P. 115.

2. 63 C.J., 393.

3. Arrow Distilleries v. Globe Brewing Co., 4 Cir., 117 F.2d 347.

4. American Automobile Ass'n v. American Automobile Owners' Ass'n, 216 Cal. 125, 133, 13 P.2d 707, 82 A.L.R. 699; also Restatement of Torts, Sec. 731, et seq.

5. Montgomery v. Thompson, 1891, A.C. 217, 225.

6. Aetna Casualty, etc. v. Aetna Auto Finance, 5 Cir., 123 F.2d 582.

name or mark by a newcomer. If such is likely, the reputation of the complainant is put into the hands of the defendant. The test is carried into the Lanham Trade Mark Act [7] which makes likelihood of confusion, mistake or deception of purchasers as to source the sole test of infringement.

Defendant has not as yet engaged in business. Proof of actual confusion is therefore not obtainable. Such is not a prerequisite to injunctive relief.[8] The prospective confusion, so plaintiffs say, will necessarily follow the avowed purpose of defendant, as disclosed by their "Prospectus", to assist their members in obtaining coverage for liability of or loss by them resulting from injury or damage to property through ownership or use of a motor vehicle and that "American Auto" in the insurance world identifies the American Automobile Insurance Company.

Though relief is not to be denied if the businesses are non-competitive,[9] the apprehension of confusion is less in non-competitive than in competitive businesses. The trend of the decisions is to place less emphasis upon competition and more on confusion.[10] It may be argued persuasively that the advertising of a name in a non-competitive business conducted ethically and honestly would redound to the advantage of the owner of that name. As we said in the recent case of Sunbeam Lighting Co. v. Sunbeam Corp., 9 Cir., 1950, 183 F.2d 969, "If plaintiff's goods are so good that the mere mention of their trade name or mark would be sufficient for a reasonable person to select an article bearing it, no matter how unrelated plaintiff's goods are to the article, then, as it seems to us, plaintiff must suffer the price of virtue", and further, referring to the marketing of an unmeritorious article, "If, in course of our free enterprise, someone would market an unworthy article outside plaintiff's field bearing the name Sunbeam it must be borne as not an unlikely circumstance following plaintiff's selection of a non-fanciful word popular with commercial concerns."

If no likelihood of deception appears the plaintiffs cannot prevail even though the absence of competition be treated as no objection.[11] As "probable confusion cannot be shown by pointing out that at some place, at some time, some one made a false identification",[12] so the possibility that in rare and isolated instances relatively few persons may carelessly mistake the source does not warrant relief.

The name American Auto Club suggests an association for the purpose of engaging in the business usually engaged in by automobile clubs and not necessarily including the insuring of members. The word "Club" is descriptive of its objectives and distinguishes defendant from plaintiffs and from the identity which they draw to them through the restricted use of "American Auto". The evidence shows that the parties will not be in competition except in the limited respect noted and there is disclosed no intent of defendant to deceive the public into believing that its business is

7. 15 U.S.C.A. § 1051 et seq.

8. Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972, 974; L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272; Schwarz v. Schwarz, 93 Cal.App. 252, 255, 269 P. 755; Winfield v. Charles, 77 Cal.App.2d 64, 70, 175 P.2d 69; Stork Restaurant v. Sahati, 9 Cir., 166 F.2d 348, 354.

9. Academy on Motion Picture Arts, etc. v. Benson, 15 Cal.2d 685, 104 P.2d 650; see also 265 Tremont Street Inc. v. Hamilburg, 321 Mass. 353, 73 N.E.2d 828, 830.

10. General Industries Co. v. 20 Wacker Drive Bldg. Corp., 7 Cir., 156 F.2d 474, 478.

11. Yale Electric Corp. v. Robertson, 2 Cir., 26 F.2d 972; L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272, 273; Certain-Teed Products Corp. v. Philadelphia & Suburban Mortgage Guarantee Co., 3 Cir., 49 F.2d 114, 115; Yale & Towne Mfg. Co. v. Rose, 120 Conn. 373, 377, 378, 181 A. 8, Restatement: Torts, Sec. 730, comment b: Sec. 731. 148 A.L.R. 63, 64, 89; 52 Am.Jur., Trademarks, Tradenames, & Trade Practices, Sec. 99. See Norton v. Chioda, 317 Mass. 446, 451, 58 N.E.2d 828; Silbert v. Kerstein, 318 Mass. 476, 479, 62 N.E.2d 109.

12. McGraw-Hill Publishing Co. v. American Aviation Associates, 73 App.D.C. 131, 117 F.2d 293, 295.

a part of plaintiffs' or is to be conducted under auspices of plaintiffs. The parties are engaged in essentially different fields of activity. The slight overlapping is in a relatively small field of defendant's proposed activities. It is unlikely that persons joining the defendant club will, except in extremely rare instances, do so in the mistaken belief that the club has any association with plaintiffs. The confusion which plaintiffs fear is ephemeral. They are unlikely to sustain any actionable loss resulting from defendant's proposed activities. If not more than 1/10th of 1% of the customers when applying for insurance state the company by which they wish the coverage to be made (the experience of one of the brokers who gave testimony), or some other relatively small percentage, a still smaller percentage would be expected to name the plaintiffs and the number which might name or have in mind the plaintiffs as "American Auto" would be insignificantly few.

The judgment appealed from is affirmed.